IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil No. 3:26-CV-417

Maurice Brown,

    Plaintiff,

v.

Union County Public Schools,

    Defendant.

**COMPLAINT**
(Jury Trial Demanded)

## INTRODUCTION

Plaintiff, Maurice Brown ("Mr. Brown" or "Plaintiff"), by and through undersigned counsel, brings this Complaint against Defendant, Union County Public Schools ("UCPS" or "Defendant") and alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action against Defendant for violations of Title VII of the Civil Rights Act of 1964 ("Title VII") [42 U.S.C. §2000e-2] and 42 U.S.C. § 1981 ("Section 1981").

2. Plaintiff is a Black man who began complaining to his employer, beginning in November 2024, that he was being targeted and experiencing disparate treatment within his department. Plaintiff is the only Black employee in his department.

1

3.      Plaintiff had no performance issues. Yet, despite multiple complaints, Defendant repeatedly allowed Plaintiff's supervisor to reduce his responsibilities without explanation.

4.      After multiple complaints, Plaintiff was demoted to a non-leadership position.

JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under Title VII of the Civil Rights Act and   42 U.S.C. § 1981. This court also has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).

6.      This Court has personal jurisdiction over Defendant because it, at all times material, continuously conducted business in Union County, North Carolina.

7.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendant resides in this district, and 28 U.S.C. § 1391(b)(2), in that a substantial part of the events and omissions giving rise to the claim occurred in this district.

CONDITIONS PRECEDENT

8.      On January 30, 2026, Mr. Brown timely filed a charge, alleging race-based and disability-based discrimination and retaliation with the Equal Employment Opportunity Commission's ("EEOC") Charlotte District Office located at 129 West Trade Street, Suite 400, Charlotte, North Carolina 28202. (EEOC Charge Number 430-2025-04509).  (See Ex. 1).

2

9. On February 27, 2026, the EEOC issued a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice. (See Ex. 2)

## PARTIES

10. Plaintiff, Maurice Brown, resides in Monroe, North Carolina, and has been employed by Defendant, UCPS, since February 2006.

11. Defendant, UCPS, is a public school system in North Carolina with its principal address at 400 N. Church Street, North Carolina 28112. Defendant is an employer as defined by 42 USC § 2000e.

12. Based on information and belief, Defendant operates in multiple states and has over 500 employees.

## FACTUAL ALLEGATIONS

13. On or about September 4, 2006, Mr. Brown accepted a position with Defendant.

14. Mr. Brown was promoted to Maintenance Manager in or about 2010.

15. He was eventually promoted to Project Manager in or about 2020.

16. In this role, Mr. Brown's responsibilities included developing and executing construction projects within his approximately $4.5 million budget, meeting with project architects and engineers, attending design meetings, and reviewing contracts and pay applications.

17. As the Project Manager, Mr. Brown was solely responsible for all roofing and paving projects across UCPS's fifty-three (53) locations.

3

18.    The Project Manager role is classified as exempt under the Fair Labor Standards Act.

19.    Mr. Brown had no documented performance issues in this role.

20.    Sara Hymel, a White woman, was appointed as the Director of Planning and Construction and Mr. Brown's supervisor in June 2024.

21.    On October 3, 2024, Mr. Brown began FMLA leave following lower back surgery.

22.    He returned to work on November 18, 2024, and overheard Sara Hymel ("Hymel") describing to Jose Nunez the alleged new process for posting and closing out documents on the server.

23.    Specifically, Hymel instructed Mr. Nunez not to upload Mr. Brown's files to the server anymore. Mr. Brown would be solely responsible for posting and closing his own files on the server.

24.    However, Mr. Brown later learned that the other project managers, both of whom were White, were not required to post and close their own files.

25.    Mr. Brown reported directly to Hymel in his role as Project Manager.

26.    On November 21, 2024, Mr. Brown emailed Hymel to inform her of the disparate treatment he had experienced since his return from leave and request a meeting with Hymel, Colon Moore ("Moore"), Assistant Superintendent of Administration and Operations, and Robyn Acree ("Acree"), Employee Relations.

4

27. Specifically, Mr. Brown noted that the Forest Hill High School project, a major operation, had been removed from his list of responsibilities, and Hymel had assigned the project to Craig Reeder ("Reeder").

28. Reeder had no prior experience with construction or a project of that magnitude and had only been in the department for a few months.

29. Hymel did not explain Mr. Brown's removal from the Forest Hill High School project.

30. Mr. Brown's November 21, 2024, email mentioned his being left out of discussions with contractors, a lack of consistent direction regarding procedures, his suspension of involvement in major projects with no explanation, different treatment by his peers, Reeder and Randy Mullis ("Mullis"), and Hymel's comments to Jose Nunez.

31. Reeder and Mullis are White.

32. Mr. Brown met with Hymel and Moore on December 11, 2024, to discuss his concerns.

33. Moore is also White.

34. Based on information and belief, Hymel asked Moore if she could be placed in another department following the December 11, 2024, meeting.

35. On December 13, 2024, Robyn Acree ("Acree"), Employee Relations Investigator, sent a follow-up email to Mr. Brown regarding his concerns and noted that he was warranted an explanation for his removal from major projects.

5

36. On January 15, 2025, Mr. Brown emailed Moore regarding his removal from a major project.

37. On January 31, 2025, Mr. Brown sent an email to Moore explaining that he had not received an explanation from Hymel regarding his removal from the project.

38. On February 12 2025, Mr. Brown met with Moore again to discuss his concerns regarding disparate treatment.

39. On February 19, 2025, Mr. Brown sent Moore an email recapping their February 12, 2025, meeting about disparate treatment.

40. Moore never responded to the email.

41. On May 16, 2025, Defendant audited Mr. Brown's time.

42. Based on information and belief, the audit was conducted at Hymel's direction.

43. The auditor alleged that Mr. Brown had failed to submit a request for time off in July 2024, and as a result, his annual leave would be reduced and his paycheck would be garnished.

44. After reviewing the auditor's spreadsheet, Mr. Brown responded via email on May 19, 2025, that he was owed an additional 100 hours of annual leave and twelve (12) hours of vacation.

45. The auditor never responded to Mr. Brown's email, and no reduction was made to his leave or paycheck.

46. Mr. Brown is the only Black person in his department, and based on information and belief, he was the only person audited.

47. Defendant did not respond to Mr. Brown's May 19, 2025, email regarding his annual leave hours.

48. On June 27, 2025, Mr. Brown received an email from Danny McManus ("Manus"), Director of Facilities and Maintenance, adding mobile unit management to his list of responsibilities.

49. McManus does not supervise Mr. Brown, Mr. Brown does not report to McManus for any of his duties, and Mr. Brown had no prior experience (or training) with mobile unit management or relocations.

50. At the time that McManus assigned the project, Mr. Brown was responsible for 50% of the department's projects compared to Mullis's 31.25% of the projects, and Reeder's 12.5% of the projects.

51. On or about August 21, 2025, Mr. Brown noticed that someone had gained access to his email account and specifically deleted messages he sent to Hymel, McManus, and others regarding various projects that Hymel had inquired about.

52. A later investigation conducted by Defendant's Information Technology department confirmed that someone had gained access to Mr. Brown's computer and synchronized his computer with Hymel's computer.

53. Based on information and belief, synchronization of these devices would allow Hymel to track Mr. Brown's activities on his computer, and Defendant did not take this action against Mr. Brown's White peers.

54. On September 2, 2025, Defendant informed Mr. Brown, Reeder, and Mullis that their job descriptions were being restructured and they would have to reapply for the "new" project manager positions.

55. Mr. Brown, Reeder, and Mullis were interviewed on September 30, 2025.

56. McManus and Hymel, the same individuals that Mr. Brown had complained about, were part of the interview team.

57. After the interviews, Reeder and Mullis were invited to lunch with Hymel, Moore, and others involved in the hiring process on September 30, 2025, but Mr. Brown was not invited.

58. On October 3, 2025, Hymel filed a report with Human Resources alleging that Mr. Brown made a threatening statement in the presence of Reeder and Mullis.

59. Mr. Brown was immediately placed on administrative leave following Hymel's accusation and told that Defendant was allegedly investigating the claim.

60. Mr. Brown denied making a threatening statement, and he had no history of threatening or aggressive behavior throughout his tenure with Defendant.

61. Mr. Brown was informed of the specific allegations while the investigator was interviewing him.

62. On November 18, 2025, Dr. Kevin Plue ("Dr. Plue"), Assistant Superintendent of Human Resources, informed Mr. Brown that, based on the investigation, he was being demoted from Project Manager to Furniture Coordinator.

63. Mr. Brown was not allowed to appeal the Defendant's decision.

8

64. Although it was not discussed during the November 18, 2025, meeting, Defendant removed Mr. Brown from leadership classes upon his return to work.

65. The leadership classes are required for promotion opportunities.

66. Defendant has not explained the reason for Mr. Brown's removal from the leadership classes.

67. The Project Manager role is a leadership role and provides an opportunity for promotion to a Director position.

68. The Furniture Coordinator role is a non-leadership role and provides no path for promotion.

69. As Furniture Coordinator, Mr. Brown's responsibilities include maintaining an accurate inventory of the school district's furniture.

70. Mr. Brown inquired with Defendant about his removal from the Leadership classes on December 9, 2025, December 19, 2025, and January 13, 2026.

71. Defendant has not responded to Mr. Brown's inquiries as of the date of this filing.

72. On November 21, 2025, in compliance with the Defendant's policy, Mr. Brown emailed Dr. Andrew Houlihan ("Dr. Houlihan"), Superintendent of Union County Public Schools, regarding his concerns about his removal from a leadership position.

73. On December 2, 2025, Mr. Brown contacted Dr. Plue's secretary to request a meeting to follow up on his November 21, 2025, email to Dr. Houlihan.

9

74. Dr. Plue met with Mr. Brown on December 8, 2025, and stated both during the meeting and in subsequent correspondence that Defendant changed Mr. Brown's work location and supervisor in an attempt to prevent further adverse actions and retaliation against Mr. Brown.

75. Mr. Brown requested access to the investigator's interview recordings and transcripts nearly a month after the close of Defendant's investigation.

76. On January 5, 2025, Mr. Brown was granted access to review the recordings.

77. He discovered that the recordings did not match the interview transcripts, and the investigator appeared to lead the witnesses during the investigation.

78. Mr. Brown emailed Emily Kraftson ("Kraftson"), Director of Hiring and Talent Acquisition, on January 23, 2026, regarding a continued pattern of retaliation, harassment, and micromanagement by Hymel and McManus.

79. Mr. Brown's email also requested an update on the Defendant's investigation into his claims.

80. On this same day, Mr. Brown was instructed by Chambers that he was not to be present at the office, under any circumstances, for the entire day.

81. No explanation was provided for Defendant's demand that he not be present at the office.

82. Dr. Plue replied to Mr. Brown's email on January 28, 2026, and alleged that Mr. Brown's concerns would be added to Defendant's investigation.

10

83. As of the time of this filing, Defendant has not contacted Mr. Brown regarding its alleged investigation into his claims.

## CLAIMS FOR RELIEF

### COUNT I – Unlawful Race-Based Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*

84. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

85. Plaintiff, a black man, is a member of a protected class.

86. Plaintiff's job performance was satisfactory.

87. Defendant took adverse employment action against Plaintiff by removing him from major projects without cause or explanation, and removing him from a leadership position.

88. Defendant also created a hostile work environment by subjecting Plaintiff to audits, deleting important emails, syncing his computer, and relieving him of major projects without cause or explanation.

89. Plaintiff was treated differently from similarly situated employees outside of his protected class.

90. Plaintiff suffered damages as a result of Defendant's unlawful actions, including emotional distress, loss of dignity, past and future lost wages and benefits, lost promotion opportunities, and the costs of bringing this action.

91. Defendant intentionally violated Mr. Brown's rights under Title VII with malice or reckless indifference, and as a result, is liable for punitive damages.

11

## COUNT II – Unlawful Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*

92. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

93. Plaintiff, a black man, is a member of a protected class.

94. Plaintiff engaged in protective activity by filing complaints of mistreatment, disparate treatment, and retaliation.

95. Defendant took adverse employment action against Plaintiff by demoting him to a non-leadership position and removing him from leadership classes.

96. A causal connection exists between Plaintiff's protected activity and Defendant's adverse employment actions.

97. Plaintiff suffered damages as a result of Defendant's unlawful retaliatory actions, including emotional distress, loss of dignity, past and future lost wages and benefits, and the costs of bringing this action.

98. Defendant intentionally violated Mr. Brown's rights under Title VII with malice or reckless indifference, and as a result, is liable for punitive damages.

## COUNT III – Unlawful Discrimination in Violation of 42 U.S.C. § 1981

99. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

100. Plaintiff is a Black man, a member of a protected class, and was qualified for the Project Manager role.

101. Plaintiff's performance was satisfactory.

12

102.    Defendant took adverse employment action against Plaintiff by removing him from major projects without cause or explanation, subjecting Plaintiff to audits, deleting important emails related to projects, and secretly syncing his computer.

103.    Other employees who are not members of the protected class were not treated the same under apparently similar circumstances.

104.    By discriminating against Plaintiff based on his race, Defendant denied Plaintiff the same right to enjoy the benefits, privileges, terms, and conditions of contracts as is and was enjoyed by non-black citizens, in violation of Plaintiff's rights under the Civil Rights Act of 1866 (42 U.S.C. § 1981).

105.    Plaintiff has suffered damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

106.    Defendant intentionally violated Plaintiff's rights under Section 1981 with malice or reckless indifference to Plaintiff's rights, and is liable for punitive damages as a result.

**COUNT IV– Unlawful Retaliation in Violation of Title VII of 42 U.S.C. § 1981**

107.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

108.    Plaintiff engaged in protected activity by filing complaints alleging disparate treatment and retaliation.

13

109. Defendant took adverse employment action against Plaintiff by conducting a sham investigation and demoting him to a non-leadership role.

110. A causal connection exists between Plaintiff's protected activity and Defendant's adverse employment actions.

111. Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

112. Defendant intentionally violated Plaintiff's rights under Section 1981 with malice or reckless indifference to Plaintiff's rights, and is liable for punitive damages as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

A. Accept jurisdiction over this matter;

B. Award Plaintiff damages for past and future loss of wages and benefits, plus interest;

C. Award Plaintiff compensatory and punitive damages;

D. Award Plaintiff damages for emotional distress;

E. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action;

F. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

14

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Respectfully submitted on this 28th day of May, 2026.

/s/ Kirton M. Madison
Kirton M. Madison
North Carolina State Bar No. 43029
MADISON LAW, PLLC
8936 Northpointe Executive Park Drive
Suite 240-260
Huntersville, NC 28078
Telephone: (704) 981-2790
kmadison@madlawpllc.com
ATTORNEY FOR PLAINTIFF

15